# 25-71

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**Case No. 23-CV-6750 (VEC) (S.D.N.Y.)**

**NATIONAL ORGANIZATION FOR WOMEN-NEW YORK CITY,**
*Plaintiff-Appellant*,

v.

**UNITED STATES DEPARTMENT OF DEFENSE, and
UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,**
*Defendants-Appellees*.

## BRIEF FOR THE PLAINTIFF-APPELLANT

Michael J. Wishnie, Esq.
Natalia Friedlander, Esq.
Mia Alvarez, Law Student Intern
Elizabeth Beling, Law Student Intern
Tobey Phillips, Law Student Intern
Briana Thompson, Law Student Intern
JEROME N. FRANK
   LEGAL SERVICES ORGANIZATION
YALE LAW SCHOOL
P.O. Box 209090
New Haven, CT 06520
Phone: (203) 432-4800

Priscilla J. Smith, Esq.
Donovan Bendana, Law Student Intern
Indu Pandey, Law Student Intern
REPRODUCTIVE RIGHTS
   & JUSTICE PROJECT
YALE LAW SCHOOL
319 Sterling Place
Brooklyn, NY 11238
Phone: (347) 262-5177

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................... i

PRELIMINARY STATEMENT ................................................................... 1

JURISDICTIONAL STATEMENT ............................................................ 4

QUESTIONS PRESENTED ......................................................................... 4

STATEMENT OF THE CASE ..................................................................... 5

A. Factual Background. ...................................................................... 5

    1. The Military's Infertility Crisis. ......................................... 5

    2. The History of IVF Access for Service Members and Veterans. ............... 7

B. Procedural History. ..................................................................... 11

SUMMARY OF THE ARGUMENT ......................................................... 13

ARGUMENT ............................................................................................ 15

I. The District Court Has Jurisdiction Over Plaintiff's Constitutional and Statutory Challenges Against Defendant VA. .............................. 15

    A. District Courts Have Jurisdiction Over Facial Constitutional Challenges Affecting the Provision of Veterans' Benefits. .................. 17

    B. The VJRA's Jurisdictional Bar Should Be Narrowly Construed. ............. 22

    C. The District Court Had Jurisdiction Over Plaintiff's Claims that VA's IVF Policies Violate Section 1557. ...................... 25

II. The District Court Erred in Dismissing Plaintiff's Section 1557 Sex Discrimination Claim. ....................................................................... 30

    A. Plaintiff Has Adequately Alleged Section 1557 Sex Discrimination. ........ 30

    B. The ACA Created a Uniform Pleading Standard that Includes Disparate Impact Claims. .............................. 33

    C. Even if Solely Governed by Title IX Standards, Section 1557 Sex Discrimination Claims Still Permit Disparate Impact Claims. ............. 37

III. The 2024 DoD Policy Violates the APA. ............................................ 43

    A. DoD Policy Is Arbitrary and Capricious. .................................... 44

    1.   DoD Irrationally Treats IVF Differently from Similar Medical Care. ....................................................................................45

    2.   DoD Failed to Justify Its Particular Policy Design, Irrationally Excluding an Entire Cohort of Potential Beneficiaries. ........................50

    3.   DoD's Claim that Its Authority to Provide IVF Benefits Was Limited by Statute Was Unreasonable. ..................................................51

    4.   DoD Failed to Consider the SCR's Disparate Impact. ..........................55

  B.  DoD Policy Violates Federal Law and the U.S. Constitution. .................56

IV.  DEFENDANTS' POLICIES VIOLATE THE FIFTH AMENDMENT RIGHT TO PROCREATE. ........................................................................................................56

  A.  Defendants' Policies Violate the Right to Procreate Through Unequal Restriction. ..............................................................................................57

  B.  The District Court's Improper Reliance on *Harris v. McRae* Mischaracterizes Plaintiff's Claims. ........................................................60

  C.  Defendant's Policy Cannot Withstand the Heightened Scrutiny Warranted in this Case. ..............................................................................61

**CONCLUSION** .........................................................................................................**63**

**CERTIFICATE OF COMPLIANCE** ..............................................................**65**

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Sandoval*, 532 U.S. 275 (2001).. ...........................................40

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ....................................................31

*Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023).............................25, 26, 29

*Baltimore & O.R.R. Co. v. ICC*, 826 F.2d 1125 (D.C. Cir. 1987) ..........52

*Bates v. Nicholson*, 398 F.3d 1355 (Fed. Cir. 2005) ...............................24

*Bernal v. Fainter*, 467 U.S. 216 (1984).....................................................62

*Blue Water Navy Vietnam Veterans Ass'n, Inc. v. McDonald*,
    830 F.3d 570 (D.C. Cir. 2016) .........................................21, 22, 24, 25

*Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667 (1986) ...........22

*Brodsky v. U.S. Nuclear Regul. Comm'n*, 704 F.3d 113 (2d Cir. 2013) ...............49

*Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*,
    955 F.3d 305 (2d Cir. 2020)...................................................................38

*Broudy v. Mather*, 460 F.3d 106 (D.C. Cir. 2006) .............................23, 24

*Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817 (D.S.C. 2015) ........36

*Chau v. SEC*, 665 F. App'x 67 (2d Cir. 2016) .........................................26

*Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971)......43

*Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632 (1974) ...........57, 59, 61, 63

*Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005 (D.C. Cir. 1999) ........45

*Cornelio v. Connecticut*, 32 F.4th 160 (2d Cir. 2022).............................62

*Dep't of Com. v. New York*, 588 U.S. 752 (2019) ..................................49

*Disabled Am. Veterans v. U.S. Dep't of Veterans Affs.*, 962 F.2d 136
    (2d Cir. 1992)...................................................................................passim

*Dobbs v. Jackson Women's Health Org.*, 5 U.S. 215 (2022)..................61

*Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) ..........................41, 42

*Eisenstadt v. Baird*, 405 U.S. 438 (1972)............................................57, 58

*Floyd-Mayers v. Am. Cab Co.*, 732 F. Supp. 243 (D.D.C. 1990) ..........28

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) .............26

*Garland v. Ming Dai*, 593 U.S. 357 (2021) .............................................49

*Greater Bos. Television Corp. v. FCC*, 444 F.2d 841 (D.C. Cir. 1970) ...............43

*Guardians Ass'n v. Civ. Serv. Comm'n*, 463 U.S. 582 (1983) ..................................40

*Harper v. Virginia State Bd. of Elections*, 383 U.S. 663 (1966) ..............................61

*Harris v. McRae*, 448 U.S. 297 (1980) ........................................................56, 60, 61

*INS v. St. Cyr*, 533 U.S. 289 (2001) ............................................................................16

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005) ......................................40

*Jenkins v. N.Y.C. Transit Auth.*, 646 F. Supp. 2d 464 (S.D.N.Y. 2009) .................33

*Johnson v. Robison*, 415 U.S. 361 (1974) ..................................................................18

*Klaneski v. Bristol Hosp., Inc.*, No. 3:22-CV-1158, 2023 WL 4304925
(D. Conn. June 30, 2023) ........................................................................................31

*Larrabee by Jones v. Derwinski*, 968 F.2d 1497 (2d Cir. 1992) ......................18, 19

*Loper Bright Enter. v. Raimondo*, 603 U.S. 369 (2024) ..........................................25

*Loving v. Virginia*, 388 U.S. 1 (1967) ........................................................................58

*M.L.B. v. S.L.J.*, 519 U.S. 102 (1996) ........................................................................58

*Mabry v. State Bd. of Cmty.*, 813 F.2d 311 (10th Cir. 1987) ...................................42

*Maher v. Roe*, 432 U.S. 526 (1977)............................................................................60

*Mandala v. NTT Data, Inc.*, 975 F.3d 202 (2d Cir. 2020).......................................31

*Mem'l Hosp. v. Maricopa Cty.*, 415 U.S. 250 (1974) ...............................................63

*Moe v. Dickens*, 669 F.2d 67 (2d. Cir. 1968) ...........................................................61

*Monk v. United States*, No. 3:22-CV-1503, 2024 WL 1344712
(D. Conn. Mar. 29, 2024)........................................................................................26

*Motor Vehicle Mfrs. Ass'n of U.S., Inc v State Farm Mut. Auto. Ins.
Co.*, 463 U.S. 29 (1983) ...........................................................................43, 44, 54

*N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512 (1992) ........................................38, 39

*Nat. Res. Def. Council, Inc. v. EPA*, 961 F.3d 160 (2d Cir. 2020)........................44

*Nat'l Ass'n of Regul. Util. Comm'rs v. ICC*, 41 F.3d 721 (D.C. Cir. 1994) ..........51

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) .................................37

*Nat'l Org. for Women-New York City v. United States Dep't of Def.*,
No. 23-CV-6750 (VEC) (S.D.N.Y. Oct. 31, 2024) ................................................5

*N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405 (1973)............................35

*New York v. FERC*, 783 F.3d 946 (2d Cir. 2015) ....................................................43

*Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353 (S.D.N.Y. 2016)....................42

*Obergefell v. Hodges*, 576 U.S. 644 (2015) .........................................57, 58, 59, 61

iv

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81
(2d Cir. 2011)................................................................................41

*Pavan v. Smith*, 582 U.S. 563 (2017) ............................................59, 61

*Plyler v. Doe*, 457 U.S. 202 (1982) .....................................................61

*Powers v. McDonough*, 713 F. Supp. 3d 695 (C.D. Cal. 2023) ............25, 26, 27, 28

*Prewitt v. McDonough*, 633 F. Supp. 3d 195 (D.D.C. 2022) ........................19, 20

*Prill v. NLRB*, 755 F.2d 941 (D.C. Cir. 1985)........................................53

*Rumble v. Fairview Health Servs.*, No. 14-CV-2037, 2015 WL 1197415
(D. Minn. Mar. 16, 2015).................................................................34, 35

*Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945
(9th Cir. 2020)...............................................................................34, 35

*Sea-Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640 (D.C. Cir. 1998)..............53

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943)................................................44, 49, 51

*Shapiro v. Thompson*, 394 U.S. 618 (1969) ...............................................62

*Sharif by Salahuddin v. N.Y. State Educ Dep't*, 709 F.Supp. 345
(S.D.N.Y. 1989) ............................................................................37, 39

*Sherman v. Black*, 510 F. Supp. 2d 193 (E.D.N.Y. 2007)...............................56

*Skinner v. Oklahoma*, 316 U.S. 535 (1942)...........................................57, 58, 59, 61

*Soule v. Conn. Ass'n of Schs.*, No. 3:20-CV-00201, 2024 WL
4680533 (D. Conn. Nov. 5, 2024) .....................................................39

*Soule by Stanescu v. Conn. Ass'n of Sch., Inc.*, 57 F.4th 43 (2d Cir. 2022)...........41

*Sugrue v. Derwinski*, 26 F.3d 8 (2d Cir. 1994) .........................................15

*Tex. Dept. of Hous. & Cmty Affs. v. Inclusive Cmtys. Project, Inc.*,
576 U.S. 519 (2015)..........................................................................37, 40, 41

*Thomas v. Principi*, 394 F.3d 970 (D.C. Cir. 2005)...................................24

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) ...........................26, 28, 29

*Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016).............................................29

*Transitional Hosps. Corp. of La., Inc. v. Shalala*, 222 F.3d 1019
(D.C. Cir. 2000) .............................................................................53

*Tunac v. United States*, 897 F.3d 1197 (9th Cir. 2018).............................24

*United States v. Nova Scotia Food Prods. Corp.*, 568 F.2d 240 (2d Cir. 1977).....55

*United States v. Ross*, 848 F.3d 1129 (D.C. Cir. 2017)................................53

*United States v. Virginia*, 518 U.S. 515 (1996)........................................62

*Vermont Yankee Nuclear Power Corp. v. Nat'l Res. Def. Council, Inc.*,
   435 U.S. 519 (1978).............................................................................49

*Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (9th Cir. 2012) ...16, 20, 23

*Weinreb v. Xerox Bus.* No. 16-CV-6823, 2020 WL 4288376
   (S.D.N.Y. July 27, 2020) ....................................................................37

*Westar Energy, Inc. v. Fed. Energy Regul. Comm'n*, 473 F.3d 1239
   (D.C. Cir. 2007) ...........................................................................45, 46

*Women's Equity Action League v. Cavazos*, 906 F.2d 742 (D.C. Cir. 1990)..........56

*Yale–New Haven Hosp. v. Leavitt*, 470 F.3d 71 (2d Cir. 2006) .............................53

*Yet v. Hochul*, No. 21-2212-CV, 2022 WL 17176394 (2d Cir. Nov. 23, 2022) .....30

*Zablocki v. Redhail*, 434 U.S. 374 (1978) ...............................................................61

## Administrative Decisions

*Camacho v. Nicholson*, 21 Vet. App. 360 (2007) ...................................................27

*Love v. McDonough*, 35 Vet. App. 336 (2022) .......................................................27

*Vaughn v. Shinseki*, No. 11-0832, 2011 WL 1229064
   (Vet. App. Apr. 4, 2011) ..............................................................16, 28

## Statutes

5 U.S.C. § 704 .........................................................................................................55

5 U.S.C. § 706(2)(A) ...............................................................................................43

5 U.S.C. § 706(2)(B) ..........................................................................................43, 56

5 U.S.C. § 706(2)(C) ..........................................................................................43, 56

10 U.S.C. § 234(b)(3)...............................................................................................53

10 U.S.C. § 1074(a)............................................................................................passim

10 U.S.C. § 1074(c)(4)..........................................................................46, 52, 53, 54

10 U.S.C. § 1074d ................................................................................................7, 54

10 U.S.C. § 1074d(b)............................................................................52, 53, 54

10 U.S.C. § 1079(d)..................................................................................................46

10 U.S.C. § 1079(e)..................................................................................................46

20 U.S.C. § 1681 .................................................................................................34, 38

20 U.S.C. § 1681(a) ........................................................................41

28 U.S.C. § 1291 ..............................................................................4

28 U.S.C. § 1331 ..............................................................................4

28 U.S.C. § 1343 ..............................................................................4

28 U.S.C. § 2201 ............................................................................28

28 U.S.C. § 2202 ............................................................................28

29 U.S.C. § 794(a) ...................................................................34, 38

38 U.S.C. § 1710(a)(1)(B) ...............................................................9

38 U.S.C. § 1728(a)(3) .....................................................................9

38 U.S.C. § 511(a) ...................................................................17, 23

38 U.S.C. § 7104 ............................................................................27

38 U.S.C. § 7252 ....................................................................16, 27

38 U.S.C. § 7301(b) .........................................................................9

38 U.S.C. § 1712(a)(1)(G) ...............................................................9

42 U.S.C. § 18116(a) .............................................30, 31, 34, 35

42 U.S.C. § 18116(b) .....................................................................36

42 U.S.C. § 2000d ..........................................................................34

42 U.S.C. § 2000e ..........................................................................41

42 U.S.C. § 6101 ............................................................................34

Pub. L. No. 114-223, § 260, 130 Stat. 857 (2017) .........................9

## Regulations

32 C.F.R. § 199.4(a)(1)(i) ..............................................................46

32 C.F.R. § 199.4(b)(3)(xiv)(D) .....................................................47

32 C.F.R. § 199.4(c)(2)(xiii) ...........................................................47

32 C.F.R. § 199.4(e)(3)(i)(B)(3) ....................................................55

32 C.F.R. § 199.4(e)(8)(i) ..............................................................47

32 C.F.R. § 199.4(g)(34). ...............................................................55

34 C.F.R. § 106.21(b)(2) ................................................................40

38 C.F.R. § 4.16 ...............................................................................9

45 C.F.R. § 92.101(b)(1) ................................................................39

45 C.F.R. § 92.3(a) .........................................................................39

80 Fed. Reg. 173, 54182................................................................36
81 Fed. Reg. 31375, 31440...........................................................36
89 Fed. Reg. 88, 37532................................................................39
89 Fed. Reg. 88, 37654................................................................36

**Administrative Materials**

Defense Civilian Personnel Advisory Service, *Federal Employee Health Benefits*..........................................................................48
*Department of Defense Directive 1300.24*, 14 U.S. Dep't of Def. (Dec. 1, 2009) ...........................................................................8
Exec. Order No. 14216, 90 Fed. Reg. 10451 (2025).....................3, 50, 63
Office of Personnel Management, *Federal Benefits Open Season Highlights 2024 Plan Year* (Sept. 2023)..........................................48
*OHI FAQs for Beneficiaries*, TRICARE East.........................................7
*Travel Reimbursement for Specialty Care*, TRICARE (Mar. 11, 2025)................47
*TRICARE Policy Manual 6010.60-M*, Def. Health Agency (Apr. 1, 2015)...........47
*What's Covered*, TRICARE ...........................................................46
U.S. Dep't of Def., *Study on the Connection Between Active-Duty Military Service and Family Building Challenges* (June 12, 2024).....................5
U.S. Dep't of Veterans Affs., *Department of Veterans Affairs (VA) Report to Congress on Fertility Treatment Data* (2023) .......................7
U.S. Dep't of Veterans Affs., *VA Secretary Press Conference*, YouTube (Apr. 27, 2023)........................................................................18
*Using Other Health Insurance*, TRICARE ...........................................7

**Leglislative Materials**

156 Cong. Rec. S1842 (daily ed. Mar. 23, 2010)...........................34, 35

**Other Authorities**

Aimee Kroll-Desrosiers et al., *Infertility Services for Veterans Enrolled in Veterans Health Administration Care*, 28 Gen. Intern. Med. 2347 (2023) ..........6
Blue Cross and Blue Shield Service Benefit Plan (2025) .......................48

Cristina Isabel Ceballos, David Freeman Engstrom, & Daniel E. Ho, *Disparate Limbo: How Administrative Law Erased Antidiscrimination*, 131 Yale L.J. 370 (2021) ..........................................................56

Eli Y. Adashi, *Infertility: A Disease by Any Other Name*, JAMA F. Archive (Feb. 14, 2018)..........................................................46

Joseph Clark, *DOD Amends Assisted Reproductive Services Policy*, DOD News (Mar. 11, 2024) ..........................................................32

Kristin Mattocks et al., *Infertility Care Among OEF/OIF OND Women Veterans in the Department of Veteran Affairs*, 53 Med. Care 2 (2015) ..............6

*Spotlight on How Military Service Can Affect Fertility*, Bob Woodruff Found. (June 27, 2023)..........................................................6

Yelena Duterte, *A Feminist Critique of the VA Rating Schedule*, 31 Mich. J. Gender & L. 311 (2024)..........................................................32

## PRELIMINARY STATEMENT

Those who serve our country expose themselves to countless dangers—including combat, radioactive materials, toxic chemicals, and burn pits—that have catastrophic and often medically unexplained effects on their fertility. Service members and veterans are ordinarily entitled to generous medical benefits to "fulfill President Lincoln's promise to care for those who have served in our nation's military and for their families, caregivers, and survivors," as stated in the U.S. Department of Veterans Affairs ("VA") mission statement. When it comes to family building, however, the nation has broken its promise to those service members and veterans who cannot directly prove that military service compromised their fertility.

Service members and veterans experience infertility at much higher rates than civilians. Many need assisted reproductive technology ("ART")—the most effective of which is in vitro fertilization ("IVF")—to expand their families. Appellees U.S. Department of Defense ("DoD") and VA (hereafter "Defendants") provide health care for service members and veterans through the military health care program TRICARE and the Veterans Health Administration ("VHA"), respectively. When Appellant National Organization for Women – New York City ("NOW-NYC" or "Plaintiff") initiated this action, DoD and VA maintained three barriers to IVF access: (1) a condition that unmarried service members and veterans were ineligible

1

for IVF ("Marriage Requirement"); (2) a prohibition on the use of third-party gametes (sperm or eggs) ("Donor Gamete Prohibition"); and (3) the Service Connection Requirement ("SCR") which excludes any service members and veterans who cannot prove that their infertility was directly caused by an illness or injury incurred during service. In their revised 2024 IVF policies, which are the subject of this appeal, Defendants rescinded the first two discriminatory requirements, retaining only the SCR.

Unfortunately, because of the difficulty in establishing the etiology of infertility, Defendants' SCR excludes many veterans and service members with diagnosed infertility from eligibility for covered IVF benefits. Diagnosed infertility with unexplained or unidentifiable etiology is common. And many service members and veterans are infertile because of a confluence of medical and psychological factors stemming from service, making it difficult or impossible to prove a causal connection between service and infertility. Even worse, Defendants maintain the SCR, despite the agencies' failure to study the link between environmental factors specific to service and infertility.

The SCR promulgated in Defendants' 2024 IVF policies contradicts this Administration's declared intent to "ensure reliable access to IVF treatment, including by easing unnecessary statutory or regulatory burdens to make IVF

treatment drastically more affordable." Exec. Order No. 14216, 90 Fed. Reg. 10451 (2025). It also violates federal law and the Constitution. First, the SCR contravenes the prohibition against health care discrimination, codified in the Affordable Care Act, because of its disparate impact on female service members, who experience disproportionately high rates of unexplained infertility compared to their male counterparts. Second, DoD's application of the SCR violates the Administrative Procedure Act because it is unreasonable and unexplained. DoD has provided *no* rational, contemporaneous justification for maintaining the SCR in its 2024 policy. Lastly, Defendants violate the Fifth Amendment's guarantees of liberty and equality by imposing discriminatory barriers to benefits that implicate the fundamental right to procreate. This Court should reverse the District Court's conclusion that it lacks jurisdiction over the constitutional and Section 1557 claims against VA and hold that Defendants' SCR unlawfully deprives a deserving group of service members and veterans of the chance to start a family.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343. This Court has jurisdiction over this appeal because the District Court entered a final judgment dismissing the action on December 5, 2024, and Plaintiff timely filed notice of appeal on January 6, 2025. 28 U.S.C. § 1291.

## QUESTIONS PRESENTED

1. Whether the District Court erred in holding that the Veterans' Judicial Review Act divested it of jurisdiction to review Plaintiff's facial constitutional and statutory challenges under the Affordable Care Act ("ACA").

2. Whether the District Court erred in holding that DoD and VA's Service Connection Requirement maintained in their 2024 policies did not violate Section 1557 of the ACA.

3. Whether the District Court erred in finding that DoD's SCR was not arbitrary or capricious under the Administrative Procedure Act ("APA").

4. Whether the District Court erred in holding that the SCR did not violate the right to procreate protected by the Due Process and Equal Protection Clauses of the Fifth Amendment.

## STATEMENT OF THE CASE

On behalf of its active-duty and veteran members, Plaintiff NOW-NYC commenced this action to challenge Defendants' discriminatory IVF policies. Defendants then abandoned the first two discriminatory eligibility requirements and moved to dismiss Plaintiff's challenge to the Service Connection Requirement. On October 31, 2024, Judge Valerie E. Caproni of the U.S. District Court for the Southern District of New York granted Defendants' motion to dismiss. Joint Appendix ("J.A.") 13-44 (*Nat'l Org. for Women-New York City v. U.S. Dep't of Def.*, No. 23-CV-6750 (VEC) (S.D.N.Y. Oct. 31, 2024)) ("Dismissal"). Plaintiff timely appealed. J.A.258 (Notice of Appeal).

### A. Factual Background.

#### 1. The Military's Infertility Crisis.

Service members and veterans make countless sacrifices for our nation. They also experience infertility at higher rates than civilians.[1] Military service presents uncommon challenges to conceiving children, including family separations and interruptions in medical treatments because of deployments.[2] These logistical

---

[1] One study estimated that female service members and veterans experienced infertility at four times the national average. J.A.17-18 ¶¶ 19-20 (Am. Compl.).

[2] U.S. Dep't of Def., *Study on the Connection Between Active-Duty Military Service and Family Building Challenges* 10 (June 12, 2024), https://perma.cc/L5GY-D2G2.

barriers are compounded by the infertility risk factors that accompany military service. Such risks include injury due to combat and training exercises, environmental exposures, traumatic brain injuries, military sexual trauma, and emotional and physical trauma.[3]

Yet for years the military has largely ignored this fertility crisis and invested almost nothing in studying the effects of military service on fertility. Today, many service members and veterans cannot start a family without access to IVF.[4] Defendant VA acknowledges that infertility services are "in demand." J.A.169 (2021 VA Infertility Study). But Defendants' discriminatory IVF policies leave many service members and veterans to make a cruel choice: pay an exorbitant amount of money out-of-pocket for the chance at a viable pregnancy or forego starting a family altogether.

Despite the military community's high demand for IVF, Defendants have denied many service members and veterans access to the care they need, as many cannot meet the high bar required to qualify for IVF coverage of connecting their

---

[3] Aimee Kroll-Desrosiers et al., *Infertility Services for Veterans Enrolled in Veterans Health Administration Care*, 28 Gen. Intern. Med. 2347, 2350-52 (2023); *see generally* Kristin Mattocks et al., *Infertility Care Among OEF/OIF OND Women Veterans in the Department of Veteran Affairs*, 53 Med. Care 2 (2015).

[4] *Spotlight on How Military Service Can Affect Fertility*, Bob Woodruff Found. (June 27, 2023), https://perma.cc/V8B9-RTJX.

infertility to service.[5] Plaintiff NOW-NYC is an organization whose membership includes service members and veterans eager to start families but who cannot do so under Defendants' discriminatory IVF policies. The stories of nine NOW-NYC members appear in the Amended Complaint; the SCR bars access to IVF for all but one of them. J.A.28-31 ¶¶ 66-69, 71-74 (Am. Compl.).

### 2. The History of IVF Access for Service Members and Veterans.

Defendant DoD has broad authority to provide medically necessary healthcare, 10 U.S.C. § 1074(a), including fertility care. *Id.* § 1074d. DoD is responsible for meeting the healthcare needs of active-duty service members, and its regulations severely restrict when service members can seek other health insurance (OHI).[6]

In 2012, DoD issued a memorandum ("2012 DoD Policy Memo") authorizing the provision of limited IVF services to certain service members. Compl. Ex. A,

---

[5] A 2023 VA report on fertility treatments between FY 2018 and 2022 found that over the five-year study period, only 541 patients completed a cycle of IVF— approximately 100 per year. U.S. Dep't of Veterans Affs., *Department of Veterans Affairs (VA) Report to Congress on Fertility Treatment Data* 15 (2023), https://perma.cc/MRC5-65D9. An estimated 5,000 veterans are diagnosed with infertility each year. J.A.130 (2021 VA Infertility Study).

[6] *See Using Other Health Insurance*, TRICARE, https://perma.cc/9SNE-MG5M (describing DoD restrictions on active-duty service members' use of health insurance alternatives); *OHI FAQs for Beneficiaries*, TRICARE East, https://perma.cc/CNU2-FJFX (stating that active-duty service members are not able to use OHI).

District Ct. ECF No. 1-1. The policy facially excluded service members who (1) were single or unmarried; (2) were in a same-sex couple; or (3) needed donor gametes to conceive. J.A.20 ¶ 30 (Am. Compl.). The 2012 DoD Policy Memo also provided IVF coverage only for those service members "who have sustained [a] serious or severe illness/injury while on active duty that led to the loss of their natural procreative ability." Compl. Ex. A, District Ct. ECF No. 1-1.

Plaintiff sued in August 2023. After seeking an extension "to allow DoD and VA additional time to review the policies that are the subject of this lawsuit," Req. Extension at 1, District Ct. ECF No. 16, on March 8, 2024, DoD released an amended IVF policy. J.A.98-99 (2024 DoD Policy Memo). The new policy removed the Marriage Requirement and Donor Gamete Prohibition. *Id.* However, DoD retained its restriction on IVF access to "seriously or severely ill or injured Service members (Category II and III)"[7] whose illness or injury occurred "while on active duty [and]

---

[7] A Category II condition is "a serious injury or illness" that leaves the service member "unlikely to return to duty within a [certain] time" and warrants possible medical separation from the military. *Department of Defense Directive 1300.24*, 14 U.S. Dep't of Def. (Dec. 1, 2009), https://perma.cc/QQ6P-MW5S. A Category III condition is "a severe or catastrophic injury or illness" where the service member is "highly unlikely to return to duty" and "[w]ill most likely be medically separated from the military." *Id.*

that led to the loss of their ability to procreate without the use of [assisted reproductive technology]." J.A.100.

VA similarly has broad authority to "provide a complete medical and hospital service for the medical care and treatment of veterans." 38 U.S.C. § 7301(b). Under its statutory mandate, VA "shall furnish hospital care and medical services which the Secretary determines to be needed" both "to any veteran for a service-connected disability" and "to any veteran who has a service-connected disability rated at 50 percent or more." 38 U.S.C. § 1710(a)(1)(B). Accordingly, veterans with a disability rating of at least 50 percent can access all VA care except for dental, emergency care, and IVF, regardless of whether they need the care to treat a particular service-connected disability. *Id.* Veterans with "total disability" (a disability rating of 100 percent) are eligible for *all* VA care, including dental and emergency—*except* for IVF. 38 C.F.R. § 4.16; 38 U.S.C. §§ 1712(a)(1)(G), 1728(a)(3).

Since 2017, Congress has enacted appropriations riders directing VA to provide IVF coverage to "covered veteran[s]" "who ha[ve] a service-connected disability that results in the inability of the veteran to procreate without the use of fertility treatment." Continuing Appropriations and Military Construction, Veterans Affairs, and Related Agencies Appropriations Act, Pub. L. No. 114-223, § 260, 130 Stat. 857, 897 (2017). Because of this statutory restriction, IVF is the *only* form of

9

VA healthcare that is *always* subject to the SCR, even for veterans with a 100 percent disability rating.

From June 2017 until April 2024, VA incorporated the same Marriage Requirement and Donor Gamete Prohibition in its IVF policy as DoD, restricting IVF eligibility to "cisgender opposite-sex legally married couple[s] or other legally married couple[s] with opposite-sex gametes/reproductive organs." J.A.23 ¶ 45 (Am. Compl.); *see also* J.A.78-97 (VHA Directive 1332(2)). On April 4, 2024, in response to the instant litigation, VA rescinded its exclusion of unmarried veterans and the ban on donor gametes. J.A.106-120 (2024 VA Policy Memo). But VA continued to restrict IVF coverage to only those with a "service-connected condition that results in the inability to procreate without the use of fertility treatment." *Id.* at 118.

Defendant VA's retention of the SCR excludes many veterans from accessing IVF treatment.[8] One NOW-NYC member has service-connected breast cancer, the treatments for which render her presumptively infertile. Her oncologist has urged her to seek IVF if she hopes to have children, and she has received fertility consultation stating that she is an appropriate candidate for IVF. Yet VA has denied her coverage because she does not meet the narrow definition for inclusion in IVF

---

[8] A 2021 VA survey found the SCR to be the "biggest barrier to [v]eterans receiving IVF" coverage. J.A.165 fig.3.3.5 (2021 VA Infertility Study).

treatment. This veteran's story is one of many: Defendant VA's SCR makes it impossible for veterans who do not fit these narrow criteria to access IVF care and build their families without paying out of pocket.

### B. Procedural History.

Plaintiff filed suit on August 2, 2023, challenging Defendants' Marriage Requirement, Donor Gamete Prohibition, and Service Connection Requirement as eligibility criteria for IVF coverage. Compl. ¶¶ 5-6, District Ct. ECF No. 1. In its Amended Complaint, Plaintiff sought declaratory and injunctive relief on the grounds that these policies violate Section 1557 of the ACA, the APA, and the Fifth Amendment of the U.S. Constitution, J.A.15 ¶ 10 (Am. Compl.), and that the 2023 VA Appropriations Statute is unconstitutional insofar as it may require VA to include the SCR in its IVF coverage policy. *Id.* ¶¶ 10-12.

In its Amended Complaint, Plaintiff described the experiences of nine of its members affected by Defendants' discriminatory policies. Lindsay Church, a nonbinary Navy veteran and NOW-NYC member, has service-connected injuries that their doctors explained would prevent them from safely carrying a child. *Id.* at ¶ 72. Because their service-connected disability is a secondary cause of their infertility, they do not satisfy Defendant VA's SCR and are ineligible for covered fertility care. *Id.*

11

Another NOW-NYC member, an officer on active duty, underwent several rounds of Intrauterine Insemination (IUI), an ART procedure that often precedes IVF, with her wife, a civilian TRICARE beneficiary. *Id.* ¶ 66. The couple sold their house to cobble together the funds to pay for the treatments out of pocket. *Id.* When all IUI rounds were unsuccessful and it became clear they would need IVF, the couple put their family-building plans on hold indefinitely. This NOW-NYC member could not establish that she has a Category II or III illness or injury that has caused her infertility, so she and her wife were unable to start their family. *Id.*

In March 2024, DoD and VA eliminated their Marriage Requirement and Donor Gamete Prohibition. But the removal of these two discriminatory provisions still left the largest hurdle in place: the Service Connection Requirement. These NOW-NYC members' stories are representative of the plight of many service members and veterans who cannot tie their infertility to service in the specific ways that Defendants demand.

In March 2024, the Government moved to dismiss the challenge to the SCR. Def's Mot. Dismiss, District Ct. ECF No. 51. In an opinion and order dated October 31, 2024, the District Court dismissed Plaintiff's claims against VA for lack of subject matter jurisdiction. The District Court also dismissed Plaintiff's claim that

DoD's SCR violates Section 1557 of the ACA, the APA, and the Fifth Amendment. J.A.233-254 (Dismissal). Plaintiff timely filed this appeal.

## SUMMARY OF THE ARGUMENT

First, the District Court mistakenly held that the Veterans' Judicial Review Act of 1988 ("VJRA") divested it of jurisdiction over Plaintiff's constitutional and statutory challenges. The Court overlooked this Circuit's precedent holding that district courts possess jurisdiction over facial constitutional challenges regarding veterans' benefits, *Disabled Am. Veterans v. U.S. Dep't of Veterans Affs.*, 962 F.2d 136, 140 (2d Cir. 1992), and instead relied on an inapplicable D.C. Circuit case. Moreover, the District Court failed to recognize the narrow statutory jurisdiction of the U.S. Court of Appeals of Veterans Claims ("CAVC"), and that an Article III court is better suited to review Plaintiff's Section 1557 claim, which is collateral to the VJRA's preclusion scheme.[9]

Second, the District Court erred in dismissing Plaintiff's Section 1557 claims against both DoD and VA. The court wrongfully required that Plaintiff demonstrate

---

[9] In a footnote, and without meaningful analysis, the District Court indicated that if it had jurisdiction, it would dismiss the claims against the VA on the merits for the same reason it dismissed Plaintiff's claims against DoD. J.A.244 n.10.

intentional discrimination, rather than disparate impact, which is cognizable under Section 1557.

Third, the District Court erred in dismissing Plaintiff's APA claims against DoD. The court failed to address DoD's failure to provide *any* explanation, let alone a reasonable one, for its decision to deny IVF to any service member who cannot meet the SCR. Instead, the court improperly relied on Defendants' post hoc justifications and erroneously concluded that the exclusion was required by DoD's unreasoned choice of statutory authority. At minimum, the District Court should have ordered production of the administrative record before determining whether DoD's 2024 policy reflects the reasoned decision-making required by the APA.

Last, the District Court did not meaningfully engage with Plaintiff's claim that the SCR exclusion violates the Plaintiff's right to procreate protected by the liberty and equality guarantees of the Fifth Amendment. The Constitution requires that once the Government provides benefits that implicate a fundamental right—here, the right to procreate—any restrictions on those benefits are subject to heightened scrutiny and may not impinge on the right or discriminate in its provision without adequate justification. Defendants' SCR violates this principle.

14

## ARGUMENT

### I. The District Court Has Jurisdiction Over Plaintiff's Constitutional and Statutory Challenges Against Defendant VA.

The District Court erroneously concluded that the VJRA divested it of jurisdiction to review Plaintiff's claims against VA, stating that Plaintiff "essentially challeng[ed] the denial of benefits on behalf of its members." J.A.243 (Dismissal).

As the District Court noted, it is well established in this Circuit that "facial challenges to the constitutionality of a statute, even if they may affect veterans' benefits, are not limited to the VJRA process." J.A.242 (Dismissal) (citing *Disabled Am. Veterans v. U.S. Dep't of Veterans Affs*, 962 F.2d at 140 ("*DAV*")) ("Article III district courts have power to rule on the constitutionality of acts of Congress."). Contrary to Second Circuit precedent, however, the District Court held that Plaintiff's facial constitutional challenge is precluded by the VJRA because it functions as a challenge to a denial for benefits.

This was erroneous for three reasons. First, Plaintiff brings a facial constitutional challenge of the sort that the Second Circuit has held is *not* precluded by the VJRA. *See Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir. 1994) (courts retain jurisdiction over "suits challenging the constitutionality of the statutes underlying veterans programs").

15

Second, the District Court's position expands the VJRA's jurisdictional bar beyond its limits. Specifically, Congress intended the VJRA to preclude judicial review only of claims that second-guess the Secretary of Veterans' Affairs previous judgments in individualized benefits determinations. *See, e.g.*, *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1028 (9th Cir. 2012) ("*VCS*") (en banc). This Court should read the VJRA considering its plain meaning and the general presumption that jurisdiction-stripping statutes should be construed narrowly. *See, e.g.*, *INS v. St. Cyr*, 533 U.S. 289, 298 (2001).

Third, the District Court wrongly held that the VJRA bars Plaintiff's claims under Section 1557 of the ACA. Requiring Plaintiff to bring a Section 1557 claim through the specialized VJRA system would produce an illogical and unworkable result, in light of the CAVC's narrow jurisdictional statute, 38 U.S.C. § 7252, and "[b]ecause the [CAVC] is an appellate court . . . [that] does not engage in discovery." *Vaughn v. Shinseki*, No. 11-0832, 2011 WL 1229064, at *2. (Vet. App. Apr. 4, 2011). Further, Plaintiff's Section 1557 claim is within the expertise of an Article III court and collateral to the VJRA's channeling regime. Thus, the VJRA does not bar Plaintiff's Section 1557 claim and the District Court has jurisdiction.

16

### A. District Courts Have Jurisdiction Over Facial Constitutional Challenges Affecting the Provision of Veterans' Benefits.

The District Court has jurisdiction over Plaintiff's facial constitutional challenge that the SCR violates the right to procreate. As the District Court recognized, facial challenges to statutes, even those that affect veterans' benefits, are reviewable by Article III district courts. J.A.242 (citing *DAV*, 962 F.2d at 140). Only when a plaintiff "make[s] a claim for benefits" or "challenge[s] the denial of such a claim" does the VJRA's jurisdictional bar apply. *Id.* at 242-43 (quoting *DAV*, 962 F.2d at 141).

The District Court acknowledged this precedent but held that Plaintiff's facial constitutional challenge was precluded because "Plaintiff is essentially challenging the denial of benefits on behalf of its members." J.A.243. This holding was based on a flawed interpretation of the VJRA's text and case law, as applied to Plaintiff's constitutional challenge.

The VJRA, codified at 38 U.S.C. § 511(a), requires that VA "shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits . . . to veterans." VA's decisions are "final and conclusive and may not be reviewed by any other official or by any court . . . ." However, this statute insulates from judicial review only decisions "made by

17

the *Administrator* in the interpretation or application of a particular provision of the statute to a particular set of facts," *Johnson v. Robison*, 415 U.S. 361, 367 (1974) (emphasis added), and therefore does not bar "facial challenges to the veterans' benefits statutes [which] could be brought in district court pursuant to its federal question jurisdiction, 28 U.S.C. § 1331." *Larrabee by Jones v. Derwinski*, 968 F.2d 1497, 1500 (2d Cir. 1992); *see also DAV*, 962 F.2d at 140 (same).

Because Plaintiff brings a facial challenge to a statutory requirement, its constitutional claim is squarely within the exemption recognized by the Supreme Court in *Johnson v. Robison* and repeatedly validated by this Court. *See* J.A.35 ¶ 93 (Am. Compl.) ("The [SCR] . . . violates the equality guarantees of the Fifth Amendment."). The District Court accepted VA's argument that the SCR is codified in the VA Appropriations Act. J.A.236-237.[10] As such, the District Court erred in concluding that the VJRA divested it of jurisdiction over Plaintiff's constitutional claims against VA.

---

[10] VA has likewise stated that the SCR is a congressional mandate rather than a decision of the Secretary. *See* Pl.'s Br. Opp'n Mot. Dismiss at 10, District Ct. ECF No. 57 (citing U.S. Dep't of Veterans Affs., *VA Secretary Press Conference,* YouTube (Apr. 27, 2023), https://perma.cc/HSA2-DECW (Secretary McDonough stating that, as to IVF, there "are limitations on services that VA can provide . . . that we think are not in keeping with our requirement [] to care for all veterans.")).

Further, the District Court misapplied precedent in holding that Plaintiff's constitutional challenge impermissibly cloaked a challenge to a benefits denial. The District Court quoted *Larrabee v. Derwinski* for the proposition that because Plaintiff's members "seek a particular type . . . of medical care," J.A.244 (Dismissal), its claims are precluded. But the relevant consideration articulated in *Larrabee* was not whether the appellant sought a particular type of medical care, but rather whether the claim was a facial challenge of legislation or an appeal of an individual benefits determination. *Larrabee*, 968 F.2d at 1500 (noting that the Second Circuit has long "distinguished between attacks upon the statute as drafted and the statute as applied"). Unlike this case, *Larrabee* involved a non-facial challenge to VA actions as to an individual veteran's medical treatment. *Id.* at 1498.

*Larrabee* did not challenge the constitutionality of any VA statute, but instead an appeal of an individualized benefits determination. Unlike *Larabee*, Plaintiff challenges a decision made by Congress as in violation of the Constitution. *See Prewitt v. McDonough*, 633 F. Supp. 3d 195, 206-07 (D.D.C. 2022) (district court had jurisdiction over constitutional challenges and resolving them "does not require any inquiry into whether the VA properly handled . . . [plaintiff's] benefits requests"). And to rule on the constitutionality of the SCR, the District Court does

19

not need to consider whether VA acted properly in adjudicating a particular veteran's application for health benefits.

To be clear, Plaintiff neither seeks review of VA's individualized denial of IVF care to any of NOW-NYC's members in this action, nor of VA's determination of whether their infertility is service connected. Even if the "impetus" of a lawsuit is a Plaintiff's desire for benefits, VJRA preclusion turns on whether the claim "is unrelated to the merits of the VA's resolution of the veteran's request for benefits." *Prewitt*, 633 F. Supp. 3d at 206-07. Here, the "merit (or lack of merit) of [the] claim does not implicate *the substance* of any decision made regarding [Plaintiff's] entitlement (or lack of entitlement) to any VA benefits." *Id.* at 206 (emphasis added).

To this point, *VCS* is instructive. There, an organization challenged VA's delays in adjudicating disability claims, asserting that VA had subjected its members to "unreasonable" delays in resolving benefits determinations. *VCS*, 678 F.3d at 1017. Plaintiff VCS argued that the average delay in processing claims was unreasonable, leading the court to conclude that the plaintiff was "challeng[ing] thousands of individual mental health benefits made by the VA." *Id.* at 1027. The claim was precluded, the Ninth Circuit found, because it would have to consider "the circumstances surrounding the VA's provision of benefits to individual veterans[,]" *id.*, to determine whether there was undue delay in processing each claim. Here, by

contrast, the District Court does not need to rule on any issue relating to any individual denial of IVF coverage, nor evaluate the circumstances of VA's benefits decisions for individual veterans, because Plaintiff is facially challenging the constitutionality of the statute as to *all* veterans.

The District Court also improperly analogized Plaintiff's claims to those raised in an out-of-circuit case, *Blue Water Navy Vietnam Veterans Ass'n, Inc. v. McDonald*, 830 F.3d 570 (D.C. Cir. 2016). J.A.243. There, a group of Navy veterans who served off the coast of Vietnam challenged VA's interpretation of a statute that required them to individually prove that they were exposed to Agent Orange. *Blue Water Navy*, 830 F.3d at 574 (district court did not have jurisdiction because plaintiffs were "challeng[ing] a decision affecting the provision of veterans' benefits") (internal quotation marks omitted). The *Blue Water Navy* court held, consistent with Section 511's limitation to "decision[s] of the Secretary," that the statute only "bar[s] review in the district court of decisions that the Secretary *has actually made*." *Id*. at 575 (emphasis added).

First and most importantly, *Blue Water Navy* did not involve a constitutional claim, distinguishing it from this Circuit's precedent. *DAV*, 962 F.2d at 140-41. Unlike here, the veterans in *Blue Water Navy* brought an APA challenge to VA's *interpretation* of a statute that VA believed denied benefits to a class of veterans,

21

directly asking the district court to second guess a decision by the Secretary. *Blue Water Navy*, 830 F.3d at 573.

The District Court also misapplied *Blue Water Navy* to the allegations in this case. Specifically, the *Blue Water Navy* plaintiffs challenged VA's requirement that they prove "on a case-by-case basis that they were exposed to Agent Orange," *id.* at 572, because the policy "leads directly to the denial of certain benefits for most, if not all, of the veterans it affects." *Id.* at 574 (citation omitted). Here, unlike in *Blue Water Navy*, Plaintiff does not challenge the *means* of proving the SCR, nor does Plaintiff contest "the denial of benefits on behalf of its members." J.A.243 (Dismissal). Instead, Plaintiff brings a facial constitutional challenge to the VA requirements for receiving IVF care, not to the *method* of determining a veteran's eligibility under this scheme. The District Court erroneously relied on *Blue Water Navy* to summarily dismiss Plaintiff's claims against VA.

## B. The VJRA's Jurisdictional Bar Should Be Narrowly Construed.

As the District Court recognized, "courts begin with the presumption that agency action is reviewable." J.A.241 (quoting *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670-73 (1986)), unless "specific language . . . evinces a Congressional intent to deprive the courts of the power to hear challenges to agency action." J.A.241 (internal quotation marks omitted). No "specific language" exists

22

in the VJRA as to facial constitutional challenges and statutory challenges, and the District Court was wrong to read the VJRA to insulate VA from judicial review on such claims. In fact, quite the opposite is true. The plain text of the VJRA makes clear that § 511(a) applies only to (1) "questions of law and fact *necessary*[,]" (2) "to a *decision by the Secretary*[,]" and (3) "under a *law that affects the provision of benefits* by the Secretary . . . ." 38 U.S.C. § 511(a) (emphasis added).

First, the VJRA's limits reach only claims that would require a court to second-guess legal or factual decisions *necessary* to a decision by the Secretary. Section 511's use of "necessary" clarifies that the VJRA precludes only claims involving questions of law or fact that a district court *cannot* resolve without determining the propriety of an individual VA benefits decision. *See Broudy v. Mather*, 460 F.3d 106, 115 (D.C. Cir. 2006) (finding that the district court had jurisdiction to consider claims because those claims did not "require" "the [d]istrict [c]ourt to decide whether any of the veterans whose claims the Secretary rejected [we]re entitled to benefits"); *VCS*, 678 F.3d at 1034 (stating that a district court has jurisdiction over a claim which would "not require [it] to review 'decisions' affecting the provision of benefits to any individual claimants") (quoting 38 U.S.C. § 511(a)). In this case, the Court can adjudicate Plaintiff's constitutional and statutory claims without reviewing any individual benefits decisions by the Secretary.

23

Second, "Section 511(a) does not apply to every challenge to an action by the VA . . . . [I]t only applies where there has been a 'decision by the Secretary.' In the context of the history of this provision, the statute plainly contemplates a formal 'decision' by the Secretary or his delegate." *Bates v. Nicholson*, 398 F.3d 1355, 1365 (Fed. Cir. 2005) (citations omitted). As such, the VJRA neither bars every claim involving the VA benefits system, nor does it deny district court review over "all action or inaction by the VA . . . ." *Tunac v. United States*, 897 F.3d 1197, 1203 (9th Cir. 2018) (quoting *Thomas v. Principi*, 394 F.3d 970, 975 (D.C. Cir. 2005). Section 511(a) does not confer upon Defendant VA "*exclusive* jurisdiction to construe laws affecting the provision of veterans benefits." *Broudy*, 460 F.3d at 112.[11] As discussed in Section I.A, *supra*, Plaintiff is challenging a statutory requirement, not a decision by the Secretary. Thus, this Court can hear Plaintiff's Section 1557 claim.

Constitutional norms and canons of statutory interpretation confirm this reading. The VJRA should be interpreted considering the presumption that "the point

---

[11] The District Court misapplied *Blue Water Navy*, stating that it "cabined *Broudy*'s holding and made clear that the VJRA applies to both individual determinations and 'VA policies of general applicability,'" J.A.243 n.9. The *Blue Water Navy* court noted only that "*Broudy* focused on the requirement of a 'decision of the Secretary,'" 830 F.3d at 575, in individual benefits determinations. But NOW-NYC does not challenge a decision of the Secretary as to an individual benefits determination, and thus *Broudy's* general holding applies.

24

of special review provisions" is "to give the agency a heightened role in the matters it customarily handles, and can apply distinctive knowledge to." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 186 (2023). Additionally, as the District Court recognized, an overly broad reading of the VJRA jeopardizes separation of powers and risks overriding the purview of Article III courts. J.A.242; *see also DAV*, 962 F.2d at 140 (contention that Article III courts cannot rule on constitutionality of acts of Congress "implicates issues of constitutional separation of powers"); *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 371 (2024) (describing the "elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment"). Accordingly, the VJRA bars district court review only of (1) "decisions that the Secretary has actually made," *Blue Water Navy*, 830 F.3d at 575, and (2) actions seeking collateral review of individual benefits outcomes. The District Court's broader reading of the statute contravenes Congress's intent.

### C. The District Court Had Jurisdiction Over Plaintiff's Claims that VA's IVF Policies Violate Section 1557.

The District Court did not separately analyze its jurisdiction over Plaintiff's Section 1557 claim. Had it done so, it should have found that the statutory claim was within its jurisdiction. *See, e.g.*, *Powers v. McDonough*, 713 F. Supp. 3d 695, 713-

17 (C.D. Cal. 2023), *notice of appeal pending* (VJRA does not bar district court review of Rehabilitation Act claims against VA); *Monk v. United States*, No. 3:22-CV-1503, 2024 WL 1344712, at *4-6 (D. Conn. Mar. 29, 2024) (same, as to Federal Tort Claims Act claims).

In evaluating whether a statutory scheme channels a particular claim to an agency's review process, the Supreme Court has identified three factors. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-13 (1994). First, courts consider whether "precluding district court jurisdiction 'foreclose[s] all meaningful judicial review' of the claim." *Axon*, 598 U.S. at 186 (quoting *Thunder Basin Coal Co.*, 510 U.S. at 212). Second, courts consider whether the claim is outside the scope of the agency's expertise. *Id.* Last, courts consider whether the claim is "wholly collateral" to the channeling statute's review provisions. *Id.* Because the answer to all three of these questions is yes as to Plaintiff's Section 1557 claim, this Court should "presume that Congress does not intend to limit [district court] jurisdiction." *Id.* (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010)).

First, the District Court had jurisdiction over Plaintiff's Section 1557 claims because holding otherwise would create a jurisdictional void. This factor weighs heavily because access to "meaningful judicial review" is the "most important" of the three *Thunder Basin* factors. *Chau v. SEC*, 665 F. App'x 67, 70 (2d Cir. 2016).

26

Plaintiff cannot bring an independent Section 1557 claim through the VJRA's review system: CAVC jurisdiction is limited to review of decisions of the Board of Veterans Appeals ("BVA"), the administrative appeals body within VA, and the BVA in turn cannot hear Section 1557 claims. *See* 38 U.S.C. § 7252 (CAVC jurisdiction limited to review of BVA decisions); *see also id.* § 7104 (BVA jurisdiction limited to appeals from decisions of the Secretary). Indeed, the CAVC has declined to exercise jurisdiction over claims involving federal anti-discrimination statutes like Section 1557. *Cf. Camacho v. Nicholson*, 21 Vet. App. 360, 366 (2007) ("Neither the Board nor the [CAVC] are authorized to hear actions brought under [the Rehabilitation Act and the ADA]."); *see also Powers*, 713 F. Supp. 3d at 715 (describing why BVA cannot hear claims under the Rehabilitation Act).

And this Court should be reluctant to find otherwise. After all, as a court of limited jurisdiction, "[the CAVC] can have no jurisdiction beyond what Congress has conferred by statute." *Love v. McDonough*, 35 Vet. App. 336, 341 (2022). Nor could Plaintiff obtain the injunctive relief requested in the District Court through the VJRA's adjudication system. J.A.16 ¶ 12 (Am. Compl.) Specifically, Section 1557 provides expansive antidiscrimination protections and remedies, incorporating four federal civil rights statutes' enforcement mechanisms and prohibitions. Under the

statute, plaintiffs can access a panoply of remedies, including injunctive relief. *See infra* Section II; 28 U.S.C. §§ 2201-02.

Second, Section 1557 claims do not implicate agency expertise, as VA has "not brought its expertise to bear" on Plaintiff's statutory claim. *Powers*, 713 F. Supp. at 715. Section 1557 is a generally applicable civil rights provision, affecting all entities that receive federal funding, and it is not a statute administered by VA. Article III courts are better positioned to evaluate claims arising from its violation. *See, e.g.*, *Floyd-Mayers v. Am. Cab Co.*, 732 F. Supp. 243, 247 (D.D.C. 1990) ("[T]he judiciary is better-equipped to resolve disputes arising out of allegations of discrimination in violation of federal . . . civil rights statutes."). And because the CAVC "is an appellate court . . . [that] does not engage in discovery," *Vaughn*, 2011 WL 1229064, at *2, if Plaintiff or its members brought a freestanding Section 1557 claim there, they could not develop a record establishing the disparate impact of VA's discriminatory IVF procedures. Congress did not establish the CAVC to adjudicate independent discrimination claims such as those arising under Section 1557.

Finally, Plaintiff's Section 1557 claim is "wholly collateral" to the VJRA's review provision. The key inquiry in analyzing a claim under the third *Thunder Basin* factor is whether a challenge is collateral "to the subject of [the proposed

28

agency] proceeding." *Axon*, 598 U.S. at 188; *see also Tilton v. SEC*, 824 F.3d 276, 281 (2d Cir. 2016). Here, evaluating whether the SCR has a disparate impact based on sex in violation of an antidiscrimination statute is unrelated to matters that the BVA and the CAVC "regularly adjudicate." *Axon*, 598 U.S. at 193 (internal quotation marks omitted).

Plaintiff's claim is also collateral to the proposed individual benefits adjudications that Defendants would have Plaintiff's members bring through the VJRA's appellate mill. *See id.* Further, Plaintiff's claim is not "procedurally intertwined" with a proceeding within the VJRA channel. *Tilton*, 824 F.3d at 287. Finally, since Plaintiff's 1557 claim is not the sort that is regularly adjudicated in the VJRA appellate mill, it "cannot reasonably be characterized as the regular or routine business of" the VJRA review system. *Tilton*, 824 F.3d at 287 (internal quotations omitted); *see also Axon*, 598 U.S. at 193. Plaintiff's 1557 claim is collateral to the VJRA review system.

Evaluating Plaintiff's claims under all three *Thunder Basin* factors reveals that Congress did not intend Section 1557 claims to escape review in the district courts. The District Court erred in dismissing Plaintiff's claims against Defendant VA for lack of jurisdiction based on VJRA's narrow jurisdictional bar.

29

## II. The District Court Erred in Dismissing Plaintiff's Section 1557 Sex Discrimination Claim.

The District Court summarily dismissed Plaintiff's Section 1557 claim on the basis that "the Service Connection Requirement is gender-neutral and applies to both male and female service members." J.A.251. In doing so, the Court erroneously held that Plaintiff had not adequately alleged that Defendants' SCR created a disparate impact on women. *But see* J.A.34 ¶ 90 (Am. Compl.). The Court also implied that even if it had, Plaintiff would need to plead intentional or facial discrimination. While this Court has yet to address the appropriate pleading standards for a Section 1557 claim, *see, e.g.*, *Yet v. Hochul*, No. 21-2212-CV, 2022 WL 17176394, at *2 (2d Cir. Nov. 23, 2022) (failing to reach a 1557 claim on standing grounds), it should now clarify that plausibly pleading disparate impact is sufficient to allege sex discrimination under Section 1557.

### A. Plaintiff Has Adequately Alleged Section 1557 Sex Discrimination.

A plaintiff states a claim for sex discrimination under Section 1557 by plausibly alleging that he or she was (1) excluded from participation in, denied the benefits of, or subjected to discrimination in the provision of (2) federally funded healthcare services, and that (3) this treatment occurred on the basis of sex. *See* 42 U.S.C. § 18116(a). Plaintiff has adequately alleged sex discrimination under Section

30

1557. First, Plaintiff is an organization comprised of members subjected to discrimination in the provision of IVF insurance coverage. *See* J.A.28-31 (Am. Compl.). Second, TRICARE and VHA are federally funded programs administered by executive agencies and must comply with Section 1557. *See* 42 U.S.C. § 18116(a). Third, DoD and VA discriminate against Plaintiff's members by applying the SCR, which disparately impacts Plaintiff's members due to their sex.

To prevail on a disparate impact claim, a plaintiff must "(1) identify a specific . . . practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *See Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) (internal citation omitted). But at the pleading stage, "a plaintiff need not plead a *prima facie* case." *Id.* at 209. A plaintiff need only "set forth enough factual allegations to plausibly support each of the three basic elements of a disparate impact claim." *Id.* Further, the determination of whether a claim is plausible is "context specific." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In this case, "that context includes the history of barriers to healthcare," *Klaneski v. Bristol Hosp., Inc.*, No. 3:22-CV-1158, 2023 WL 4304925, at *5 (D. Conn. June 30, 2023), that female service members and veterans have faced.

31

According to VA's own assessments, female veterans suffer from infertility at over ten times the rate of male veterans.[12] *See* J.A.131 tbl.1.1 (2021 Veterans Fertility Study). Further, female infertility compared to male infertility is *over fourteen times* more likely to be unexplained, and therefore impossible to connect medically to service. *Compare* J.A.176 fig.A1 (2021 Veterans Fertility Study), *with* J.A.182 fig.A7 (2021 Veterans Fertility Study). Those substantially higher rates of unexplained infertility inherently cause higher rates of infertility whose cause is unknown. *See supra* Statement of the Case, Section A.

This significant disparity is not surprising, as DoD and VA have failed to adequately study the impact of service on female fertility for both service members and veterans for decades. *See* J.A.126 (2021 Veterans Fertility Study) ("Infertility prevalence and reproductive assistance needs among Veterans are understudied topics."); Yelena Duterte, *A Feminist Critique of the VA Rating Schedule*, 31 Mich. J. Gender & L. 311, 324-26 (2024). The result is that female service members and veterans with service-connected infertility are disproportionately barred from

---

[12] Given these disparities, it is no surprise that Defendants primarily identify IVF as women's health care. For example, in a press release announcing the 2024 DoD Policy Memo, DoD characterized IVF as "women's health policy." Joseph Clark, *DOD Amends Assisted Reproductive Services Policy*, DOD News (Mar. 11, 2024), https://perma.cc/X9C2-YML4. VA similarly assigns responsibility for its IVF program to its "Office of Women's Health Services." J.A.51, 85.

accessing IVF benefits due to the SCR. And Plaintiff is not required to produce more specific evidence of discrimination at the pleading stage. *See Jenkins v. N.Y.C. Transit Auth.*, 646 F. Supp. 2d 464, 469 (S.D.N.Y. 2009) ("It would be inappropriate to require a plaintiff to produce statistics to support her disparate impact claim before the plaintiff has had the benefit of discovery.").

The District Court erroneously held that Plaintiff pled "insufficient allegations to show a 'substantial disparate impact' on a protected class beyond mere speculation." J.A.249 n.12. The Court failed to engage with the clear and convincing data on gender disparities or to perform the analysis required to decide whether a disparate impact exists. Instead, the Court only addressed Plaintiff's disparate impact argument in a single footnote of the decision and only considered disparate impact with respect to the Equal Protection Clause. *Id.* Thus, this Court should reverse the District Court's decision with respect to whether Plaintiff has plausibly pled disparate impact.

## B. The ACA Created a Uniform Pleading Standard that Includes Disparate Impact Claims.

The District Court's holding—that Section 1557 does not include protections against policies with a disparate impact based on sex—is at odds with the purpose and plain language of the ACA. Before the ACA, employers and insurance

33

companies could discriminate against protected classes in the design of health benefits without violating federal antidiscrimination law. *See Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 948 (9th Cir. 2020). Titled "Nondiscrimination," Section 1557 of the ACA sought to "remedy the shameful history of invidious discrimination and the stark disparities in outcomes in our health care system," 156 Cong. Rec. S1842 (daily ed. Mar. 23, 2010) (statement of Sen. Leahy), by creating a single standard across protected classes, thus allowing plaintiffs to prove discrimination through disparate impact.

Section 1557 provides that "an individual shall not . . . be subjected to discrimination under, any health program or activity" receiving federal funding or administered by an executive agency. 42 U.S.C. § 18116(a). It does so by incorporating the prohibited "ground[s]" and "enforcement mechanisms provided for and available under" four laws: Title VI (race, color, and national origin), 42 U.S.C. § 2000d; Title IX (sex), 20 U.S.C. § 1681; Section 504 of the Rehabilitation Act (disability), 29 U.S.C. § 794(a); and the Age Discrimination Act (age), 42 U.S.C. § 6101.

Congress "intended that the same standard and burden of proof apply to a Section 1557 plaintiff, regardless of [their] protected class status." *Rumble v. Fairview Health Servs.*, No. 14-CV-2037, 2015 WL 1197415 at *12 (D. Minn. Mar.

34

16, 2015). While the text of Section 1557 has been viewed as "ambiguous on this score" by one court, *Schmitt*, 965 F.3d at 953, the incorporation of a uniform pleading standard is the most reasonable reading of the text. Section 1557 states that "[t]he enforcement mechanisms *provided for and available under* such Title VI, Title IX, section 504, *or* . . . such Age Discrimination Act . . . shall apply for purposes of violations of this subsection." 42 U.S.C. § 18116(a) (emphasis added). The use of "or" in this context means that any of the enforcement mechanisms used by the incorporated statutes are available to every claim of discrimination under Section 1557, regardless of the plaintiff's protected class. *See Rumble*, 2015 WL 1197415, at *11-12. Reading Section 1557 otherwise "would lead to an illogical result, as different enforcement mechanisms and standards would apply to a Section 1557 plaintiff depending on whether the plaintiff's claim is based on her race, sex, age, or disability." *Id.* at *11.

Because Congress enacted Section 1557 to remedy discrimination in healthcare, including the "stark disparities in outcomes in our health care system," 156 Cong. Rec. S1842 (daily ed. Mar. 23, 2010) (statement of Sen. Leahy), it would contravene the statute's intent to grant different levels of protection against discrimination for some groups, and not others. *See N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 419-20 (1973) ("We cannot interpret federal statutes to

35

negate their own stated purposes."). Moreover, in interpreting Section 1557, courts may not "invalidate or limit rights, remedies, procedures, or legal standards available to individuals aggrieved under" the four federal statutes referenced therein, 42 U.S.C. § 18116(b), further evincing Congress's intent to establish expansive and equitable antidiscrimination protections.

Consistent with the statutory text, the first regulations to implement Section 1557 issued by the U.S. Department of Health and Human Services and its Office of Civil Rights "interpret[ed] Section 1557 as authorizing a private right of action for claims of disparate impact discrimination on the basis of any of the criteria enumerated in the legislation." 81 Fed. Reg. 31375, 31440 (May 18, 2016). Nothing in the current regulations contradicts the earlier rules. 89 Fed. Reg. 88, 37654 (May 6, 2024) (declining "to adopt a stance on the appropriate standards that apply to private litigants," and stating, "[T]his is an issue appropriately addressed by the Federal judicial branch and not via agency rulemaking.").

Courts must remain "cognizant of the fact that 'Section 1557 is unique among [f]ederal civil rights laws in that it specifically addresses discrimination in health programs and activities.'" *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 853 (D.S.C. 2015) (citing 80 Fed. Reg. 173, 54182). Doctrines specific to, and appropriate for, Section 1557, can give life to Congress's intent that all patients,

36

regardless of the nature of their protected status, enjoy access to healthcare free from discrimination. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012) (ACA was intended "to increase the number of Americans covered by health insurance and decrease the cost of health care"); *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 533 (2015) ("[A]ntidiscrimination laws must be construed to encompass disparate-impact claims when their text refers to the consequences of actions and not just to the mindset of actors, and where that interpretation is consistent with statutory purpose."). Adopting a disparate impact standard does just that.

### C. Even if Solely Governed by Title IX Standards, Section 1557 Sex Discrimination Claims Still Permit Disparate Impact Claims.

Alternatively, if a sex discrimination claim under Section 1557 is solely governed by Title IX, *see, e.g.*, *Weinreb v. Xerox Bus. Servs.*, No. 16-CV-6823, 2020 WL 4288376, at *3 (S.D.N.Y. July 27, 2020), Plaintiff can still plead discrimination under a disparate impact theory. *See Sharif by Salahuddin v. N.Y. State Educ. Dep't*, 709 F.Supp. 345, 361 (S.D.N.Y. 1989) (finding that Title IX prohibits "practices with a discriminatory *effect* on one sex" and that a plaintiff "need not prove intentional discrimination").

37

Title IX's language is identical to other statutes that broadly prohibit disparate impact forms of discrimination by entities that receive federal funding. *Compare* 20 U.S.C. § 1681 (Title IX) ("No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any . . . program or activity receiving Federal financial assistance. . . ."), *with e.g.*, 29 U.S.C. § 794(a) (Section 504 of the Rehabilitation Act of 1973) ("No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."); *see also Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*, 955 F.3d 305, 311 (2d Cir. 2020) (holding that a plaintiff alleging disability discrimination under Section 504 can base their claim on a disparate impact theory). If this Court is "to give Title IX the scope that its origins dictate, [it] must accord it a sweep as broad as its language," *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1992) (internal quotation omitted), and recognize that Title IX, incorporated through Section 1557's unique statutory structure, permits claims grounded in disparate impact.

Section 1557's regulations require that the statute "[not] be construed to apply a lesser standard for the protection of individuals from discrimination than the

standards applied under [the four incorporated statutes], or *the regulations issued pursuant to those laws*." 45 C.F.R. § 92.3(a) (emphasis added). This "is because section 1557 incorporates the 'ground prohibited' under title IX." 89 Fed. Reg. 88, 37532 (May 6, 2024). Thus, not only are "the title IX regulations . . . relevant to informing what constitutes sex discrimination" for purposes of Section 1557, *id.*, but covered entities must also "comply with specific prohibitions on discrimination in the . . . implementing regulations," replacing terms like "student," "employee," or "applicant" with "individual." 45 C.F.R. § 92.101(b)(1).

Title IX's regulations have always allowed for disparate impact claims. *See Sharif*, 709 F. Supp. at 361 ("Several Title IX regulations specifically prohibit facially neutral policies" with a disparate impact). In 1975, Congress had the opportunity to review and object to the first set of regulations, but still "allowed the regulations to go into effect." *Soule v. Conn. Ass'n of Schs.*, No. 3:20-CV-00201, 2024 WL 4680533, at *5 (D. Conn. Nov. 5, 2024). "This 'laying before' provision was designed to afford Congress an opportunity to examine a regulation and, if it found the regulation 'inconsistent with the Act from which it derives its authority . . . ,' to disapprove it in a concurrent resolution." *N. Haven Bd. of Educ.*, 456 U.S. at 531-32 (citation omitted). Thus, Congress saw disparate impact as consistent with Title IX's text and purpose, and this Court should not hold otherwise.

39

Further, the Supreme Court has sustained the use of disparate impact theories as lawful and proper exercises of agencies' delegated authority, including under Title IX. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005) (recognizing that Title IX regulations extend beyond intentional discrimination); *Guardians Ass'n v. Civ. Serv. Comm'n*, 463 U.S. 582, 592 (1983) ("[T]hose charged with enforcing Title VI had sufficient discretion to enforce the statute by forbidding unintentional as well as intentional discrimination."). *Alexander v. Sandoval* is not to the contrary. 532 U.S. 275 (2001). In fact, the Court in *Sandoval* "assume[d] for purposes of deciding th[e] case that regulations promulgated under § 602 of Title VI may validly proscribe activities that have a disparate impact . . . ." *Id.* at 281.

Title IX's regulations are replete with examples of prohibited practices that, like Defendants' SCR, have a disparate impact based on sex. *See, e.g.*, 34 C.F.R. § 106.21(b)(2) (2024) ("A recipient shall not administer or operate any test or other criterion for admission which has a *disproportionately adverse effect* on persons on the basis of sex . . . .") (emphasis added). "Against this background understanding in the legal and regulatory system," Congress's decision, in enacting Section 1557, to incorporate a Title IX standard *not lesser* than those applied under its regulations, "is convincing support for the conclusion that Congress accepted and ratified the unanimous holdings of [courts] finding disparate-impact liability." *Tex. Dep't of*

40

*Hous. & Cmty. Affs.*, 576 U.S. at 536. As a criterion that has a disproportionately adverse effect on persons based on sex, Defendants' SCR is at odds with the substance and standards of Title IX's regulations. Plaintiff has a private right of action to enforce those standards through Section 1557.

Finally, holding that Section 1557 permits claims of disparate impact to combat sex discrimination is also in line with this Court's precedents. This Court has consistently applied Title VII's framework and principles to Title IX discrimination claims. *See* 42 U.S.C. § 2000e. As this Court has noted, the language of Title IX is "identical to that in Title VII, broadly prohibiting discrimination 'on the basis of sex,'" *Soule by Stanescu v. Conn. Ass'n of Sch., Inc.*, 57 F.4th 43, 55 (2d Cir. 2022) (citing 20 U.S.C. § 1681(a)); s*ee also, e.g.*, *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011) (stating that "[i]n [certain] respects, a Title IX sex discrimination claim requires the same kind of proof required in a Title VII sex discrimination claim").

In *Doe v. Columbia University*, this Court held that Title IX, "which is enforceable through an implied private right of action, was enacted to *supplement* the Civil Rights Act of 1964's bans on racial discrimination in the workplace and in universities." 831 F.3d 46, 53 (2d Cir. 2016) (emphasis added). The Court held that "claims of discrimination on account of race, religion, or national origin under Title

41

VII, and the associated pleading burden . . . apply also to Title IX claims." *Id.* at 55 (concluding that "these claims have so much in common that . . . rules the Supreme Court established for Title VII litigation appear to apply also to such similar claims of sex discrimination under Title IX"). Adopting a disparate impact pleading standard is a logical extension of this Court's prior decisions on the relationship between Title IX and Title VII. Several courts, including the Tenth Circuit, have found that Title IX does incorporate a disparate impact standard, based on the statute's similarity to Title VII, and distinguished it in this regard from Title VI. *See, e.g.*, *Mabry v. State Bd. of Cmty.*, 813 F.2d 311, 316 n.6 (10th Cir. 1987) ("While we note that Title IX is patterned after Title VI . . . analogies to Title VI should be made carefully . . . . Because Title VII prohibits the identical conduct prohibited by Title IX, i.e., sex discrimination, we regard it as the most appropriate analogue when defining Title IX's substantive standards, including the question of whether 'disparate impact' is sufficient to establish discrimination under Title IX.") (internal citations omitted).[13] None of the contrary trial court opinions relied upon by the District Court are binding on this Court. This Court should therefore vacate and

---

[13] *But see Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 363 (S.D.N.Y. 2016) (holding that Title IX precludes disparate impact claims, reasoning under the assumption that Title IX's pleading standards mirror those of Title VI). This holding is out of step with this Circuit's precedents.

42

remand Plaintiff's Section 1557 claims for consideration of its disparate impact theory in the first instance.

## III. The 2024 DoD Policy Violates the APA.

The District Court erred in dismissing NOW-NYC's APA claims against the 2024 DoD Policy's incorporation of the Service Connection Requirement. The APA imposes two applicable requirements. First, a reviewing court must set aside an agency decision that is "arbitrary [or] capricious." 5 U.S.C. § 706(2)(A); *see, e.g.*, *New York v. FERC*, 783 F.3d 946, 958 (2d Cir. 2015) (engaging in arbitrary or capricious review). Second, the Policy must be in accordance with federal law, 5 U.S.C. § 706(2)(C), and the Constitution, 5 U.S.C. § 706(2)(B).

The District Court failed to give DoD's 2024 policy the "hard look" review demanded by the APA. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) ("this inquiry into the facts is to be searching and careful"); *see also Greater Bos. Television Corp. v. FCC*, 444 F.2d 841, 851-52 (D.C. Cir. 1970). On Plaintiff's APA claims, this Court should (1) vacate the 2024 DoD Policy's incorporation of the SCR and remand to the agency; in the alternative, (2) remand without vacatur to the agency for reconsideration of the decision to include

43

the SCR; or in the further alternative, (3) remand to the District Court for reconsideration upon review of the administrative record.

## A. DoD Policy Is Arbitrary and Capricious.

Agency actions are arbitrary and capricious if they are unreasoned and contemporaneously unexplained. *State Farm*, 463 U.S. at 43 (finding that agency actions are arbitrary and capricious if they fail to "examine the relevant data and articulate a satisfactory explanation for its action" or if the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency")*; see also Nat. Res. Def. Council, Inc. v. EPA*, 961 F.3d 160, 170 (2d Cir. 2020) (same). Moreover, this explanation must be contemporaneous with the agency action. *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("*Chenery I*") (holding agency action cannot be upheld without "the grounds upon which the administrative agency acted by [sic] clearly disclosed and adequately sustained").

DoD's 2024 Policy is both unreasoned and contemporaneously unexplained. By excluding some infertile members from the IVF benefits, the SCR renders IVF's treatment unique and unreasonable in the context of TRICARE and other federal programs. Additionally, DoD wholly failed to justify its choice of statutory

44

authorization and to consider reasonable alternatives. Moreover, DoD failed to evaluate the Policy's disparate impact on female service members. DoD lacked a contemporaneous explanation for its action in all respects. Thus, the Service Connection Requirement is arbitrary and capricious.

### 1. DoD Irrationally Treats IVF Differently from Similar Medical Care.

The District Court did not credit Plaintiff's argument that DoD irrationally promulgated a policy that treats IVF coverage differently from other similar care in TRICARE and its coverage in other federal programs. It instead erroneously found that the "decision was consistent with its commitment, articulated at the time coverage was authorized." J.A.253 (Dismissal).

An agency action is arbitrary and capricious if "the agency offers insufficient reasons for treating similar situations differently." *Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1022 (D.C. Cir. 1999) (quotation marks and brackets omitted); *see also Westar Energy, Inc. v. Fed. Energy Regul. Comm'n*, 473 F.3d 1239, 1241 (D.C. Cir. 2007) ("If the agency makes an exception in one case, then it must either make an exception in a similar case or point to a relevant distinction between the two cases."). An agency decision like the one in this case, that treats

45

like cases differently without adequate explanation, is unreasonable and must be set aside by the reviewing court. *Id.*

DoD's Service Connection Requirement for IVF is extraordinary in the context of military healthcare. Generally, DoD "will" cover "medically or psychologically necessary services and supplies required in the diagnosis and treatment of illness or injury" for active-duty service members, regardless of the service connection or the severity. 32 C.F.R. § 199.4(a)(1)(i). Because IVF directly addresses the biological dysfunction [14] preventing conception, it is "medically necessary" under DoD's formulation, because it is "appropriate, reasonable, and adequate for [the] condition." TRICARE, *What's Covered* (defining "medically necessary").[15] In fact, the only medical expenses for which DoD requires proof of service connection are extended benefits under § 1074(c)(4) and § 1079(d), (e)—the statutes under which DoD chose to promulgate its IVF policy.[16] IVF thus stands out

---

[14] Infertility is widely considered to be an injury or illness. Eli Y. Adashi, *Infertility: A Disease by Any Other Name*, JAMA F. Archive (Feb. 14, 2018). The American Medical Association (AMA) and American Society for Reproductive Medicine (ASRM) view infertility as a disease. *Id.*

[15] Available at https://perma.cc/4YPC-3CRU.

[16] Extended benefits include, among other services, special education, vocational training, and respite care for primary caregivers. § 1079(d), (e).

as one of the only medically necessary treatments for an illness or injury with a service connection requirement.

TRICARE covers services of comparable medical necessity to IVF, such as quality-of-life benefits, without imposing a SCR. For example, TRICARE covers certain specialty and routine care unrelated to an injury sustained on active duty, like pregnancy and well-child care, 32 C.F.R. § 199.4(c)(2)(xiii); medically indicated plastic or reconstructive surgery, whether the need arises from a service-related injury or some other health need, *id.* § 199.4(e)(8)(i); erectile dysfunction medications, which may be no more medically necessary than IVF. *TRICARE Policy Manual 6010.60-M*, Def. Health Agency, at Ch. 4, § 15.1 3.6.4 (Apr. 1, 2015); certain vitamins and food supplements, *id.* at Ch. 8 § 7.2.3.0; medical social services in some circumstances, *see, e.g.,* 32 C.F.R. § 199.4(b)(3)(xiv)(D); and select travel benefits, including for family members, *Travel Reimbursement for Specialty Care*, TRICARE (Mar. 11, 2025), https://perma.cc/F4YB-6LGT. DoD's only response is that "Congress and the Agencies *may well have concluded*" that other conditions would be covered without a service-connection requirement "because they implicate the life or health of a servicemember or veteran in particularly acute ways." *See* Defs' Reply Memo ISO Mot. Dismiss at 10, District Ct. ECF No. 71 (emphasis added). Such justification is speculative and at odds with the medical benefits package.

47

DoD's failure to treat IVF similarly to other treatments it deems medically necessary, but which are not directed at restoring a service member to fitness for duty, renders DoD's policy design arbitrary and capricious.

Additionally, DoD's IVF coverage differs from that offered to its own civilian federal employees. The Federal Employee Health Benefit ("FEHB") provides three cycles of IVF coverage for all federal civilian employees.[17] While over 400,000 civilian DoD employees benefit from FEHB, military families cannot access these same IVF benefits.[18] Blue Cross-FEP, an available plan under FEHB, for example, specifies they will cover only medically necessary care,[19] and aptly do cover IVF.[20] DoD's 2024 Policy offered no rationale for treating IVF differently for service members and civilian workers.

DoD never offered a contemporaneous explanation for its adoption or retention of the SCR. In this litigation, DoD now advances a new rationale for the policy. Defs' Memo ISO Mot. Dismiss at 25-26, District Ct. ECF No. 52. But this

---

[17] Office of Personnel Management, Federal Benefits Open Season Highlights 2024 Plan Year 7 (Sept. 2023), https://perma.cc/U8YV-8RYR.

[18] Defense Civilian Personnel Advisory Service, Federal Employee Health Benefits, https://perma.cc/639K-9HKV.

[19] Blue Cross and Blue Shield Service Benefit Plan, 37, 155 (2025), https://perma.cc/6HTT-DT7T.

[20] *Id.* at 49-50.

48

rationale must be disregarded as a post hoc rationalization. *Chenery I*, 318 U.S. at 94-95; *Vermont Yankee Nuclear Power Corp. v. Nat'l Res. Def. Council, Inc.*, 435 U.S. 519, 549 (1978); *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019) ("[A] court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record.").

While the APA does not require an agency to have a perfect explanation of its decision on the record, the statute requires more than a perfunctory look at an agency's rationale. *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) ("[J]udges generally must assess the lawfulness of an agency's action in light of the explanations the agency offered for it rather than any post hoc rationales a court can devise."); *Brodsky v. U.S. Nuclear Regul. Comm'n*, 704 F.3d 113, 119 (2d Cir. 2013) ("[A] court can uphold a decision . . . if the agency's path may reasonably be discerned, it may not itself supply a reasoned basis for the agency's action that the agency itself has not given" (internal citations omitted)). The Court must disregard DoD's post hoc rationalization when evaluating the reasoned basis for the agency's action.

49

**2. DoD Failed to Justify Its Particular Policy Design, Irrationally Excluding an Entire Cohort of Potential Beneficiaries.**

The District Court erred in ruling that a generic policy statement was sufficient to justify the particular construction of the SCR. DoD's one-sentence policy statement does not justify the specific IVF limitation it chose. DoD stated that it "remains committed to ensuring the maximum support for our members who have become seriously ill or injured as a result of their service on Active Duty, resulting in injuries or conditions that lead to the inability of those members to procreate without the use of ART." J.A.99 (2024 Policy Memo).

Under this goal, the SCR is arbitrary and capricious because DoD failed to consider and explain why it adopted a policy that is radically under-inclusive of service members with infertility. This policy also flies in the face of President Trump's Executive Order committing his Administration to "ensure reliable access to IVF treatment, including by easing unnecessary statutory or regulatory burdens to make IVF treatment drastically more affordable." Exec. Order No. 14216, 90 Fed. Reg. 10451 (2025). Even those with Category II/III injuries or illnesses who cannot specifically link their conditions to their infertility are barred from IVF coverage. Indeed, the one-sentence statement is so vague it fails even the lowest bar for agency rationalization and is insufficient to survive an arbitrary and capricious challenge.

50

### 3. DoD's Claim that Its Authority to Provide IVF Benefits Was Limited by Statute Was Unreasonable.

The District Court erroneously concluded that DoD's choice of statutory authority provided a reasonable justification for the Policy's SCR. First, DoD's argument that it was required to promulgate the particular SCR is arbitrary and capricious because it is an erroneous conclusion of law. Second, although the District Court recognized that DoD had alternate statutory provisions under which to promulgate the policy, it erred in concluding that these other provisions would carry even more restrictions. Third, the District Court wrongly deferred to DoD's post hoc claim that its choice of statutory provision explained the Policy's exclusions. Fourth, the District Court failed to evaluate whether DoD had contemporaneously considered reasonable alternatives.

First, insofar as DoD argues that it was required to rely on the statutory source it selected, *see* Defs' Memo ISO Mot. Dismiss at 25, District Ct. ECF No. 52, this is arbitrary and capricious because it is an erroneous view of the law. *Chenery I*, 318 U.S. at 94 ("an order may not stand if the agency has misconceived the law"); *Nat'l Ass'n of Regul. Util. Comm'rs v. ICC*, 41 F.3d 721, 727-28 (D.C. Cir. 1994) ("the agency purported to find *in the statute* a legal constraint . . . that is simply not there . . . on that basis of incorrect statutory interpretation alone, we would be

51

obliged to reject the . . . reasoning"); *Baltimore & O.R.R. Co. v. ICC*, 826 F.2d 1125, 1129 (D.C. Cir. 1987) (stating that an agency may not "assert a nonexistent congressional prohibition as a means to avoid responsibility for its own policy choice").

The District Court recognized that there are "three possible statutory bases pursuant to which DoD could provide coverage for IVF," J.A.252, two of which authorize an IVF regime without the SCR. DoD is authorized to provide IVF under both 10 U.S.C. § 1074(a) (granting DoD authority to provide medically necessary healthcare) and 10 U.S.C. § 1074d(b) (authorizing "[c]omprehensive obstetrical and gynecological care, including care related to pregnancy and the prevention of pregnancy . . . [and] [i]nfertility"). Only the third statute, the one DoD chose, § 1074(c)(4), conditions treatment on a service connection requirement. Thus, contrary to the District Court's conclusion, not all authorizing statutes require the SCR. Including the SCR was a policy choice made by DoD and now justified via DoD's unnecessary selection of statutory authorization. The agency made a policy choice, which is reviewable.

The District Court fundamentally misunderstood this statutory scheme. *See* J.A.252-54. DoD did not need to promulgate its 2024 Policy pursuant to this statutory provision, as the District Court assumes. DoD argues, *see* Defs' Reply

Memo ISO Mot. Dismiss at 13, District Ct. ECF No. 71, that Congress ordained their statutory reading in its statutory authorization to VA to provide IVF benefits via VHA. *See* 10 U.S.C. § 234(b)(3). But that provision merely authorizes VA to provide the same level of IVF benefits to veterans as DoD provides to service members; it does not determine the statutory authority on which DoD must rely. Thus, DoD's inclusion of the SCR is arbitrary and capricious on account of its erroneous view of law. *See, e.g.*, *Yale–New Haven Hosp. v. Leavitt*, 470 F.3d 71, 86-87 (2d Cir. 2006); *Transitional Hosps. Corp. of La., Inc. v. Shalala*, 222 F.3d 1019, 1029 (D.C. Cir. 2000).

Where an agency has based its decision on an erroneous view of the law, a court must vacate the action. *United States v. Ross*, 848 F.3d 1129, 1134 (D.C. Cir. 2017) (finding an agency action cannot be upheld where the agency erroneously concludes it is bound to a specific decision); *Sea-Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640, 646 (D.C. Cir. 1998) ("An agency action . . . cannot be sustained where it is based . . . on an erroneous view of the law.") (quoting *Prill v. NLRB*, 755 F.2d 941, 947 (D.C. Cir. 1985) (citations omitted)). Thus, the Policy's SCR must be vacated.

Second, the District Court erred in its conclusion that 10 U.S.C. § 1074(a) and § 1074d(b) are as restrictive as § 1074(c)(4), and thus that DoD was rational in its

53

selection of the latter. J.A.252-253 (Dismissal). A combination of overlapping statutory authorities would have made IVF coverage substantially more accessible to service members. This would have avoided any issues identified with any one of the provisions: *compare* § 1074(c)(4) (imposing SCR), *with* § 1074(a) (limiting care to that provided at military treatment facilities), and § 1074d(b) (authorizing care primarily for women service members). Thus, DoD could have made IVF available to a much larger cross-section of service members.

Third, the District Court was wrong to accept DoD's post hoc rationalization for its selection of § 1074(c)(4) as the sole statutory authority for its 2024 Policy. *See* J.A.252-253 (Dismissal). There is no evidence in the record that DoD engaged in such an analysis prior to this lawsuit, much less that it explained the analysis, which should disqualify the explanation from evaluation by this Court. *See supra* Section III.A.1.

Fourth, the District Court ignored DoD's failure to contemporaneously evaluate reasonable alternatives to its choice of statutory authorization. J.A.253-254. DoD must show that it considered obvious alternatives prior to adopting the SCR, *State Farm*, 463 U.S. at 50-51, and that the facts available to it align with its chosen policy, *id.* at 43. While DoD could have relied on 10 U.S.C. § 1074(a) and § 1074d(b), neither the 2012 nor 2024 policies address the alternative sources of

54

statutory authority. DoD also should have evaluated whether it should remove its regulatory exclusion of IVF from TRICARE's basic program (CHAMPUS), 32 C.F.R. § 199.4(e)(3)(i)(B)(3), (g)(34), which would have made IVF broadly available without a SCR. In such an analysis, the facts available to DoD about high rates of unexplained infertility in the military would have weighed against any service connection requirements. *See supra* Section II.A. While DoD may have had arguments in favor of its policy, such justifications are not within the agency record, which was never produced to the District Court.

### 4. DoD Failed to Consider the SCR's Disparate Impact.

Finally, the DoD Policy is arbitrary and capricious because it failed to consider the SCR's disparate impact on women service members. *See* Section II.A. Courts have long recognized that an agency's failure to take into account differential impacts on regulated parties makes an action arbitrary and capricious. *See generally United States v. Nova Scotia Food Prods. Corp.*, 568 F.2d 240 (2d Cir. 1977) (holding agency's facially neutral policy was arbitrary and capricious for its failure to evaluate differential impact on different regulated parties). If the Court holds there is no disparate impact claim available under Section 1557, then this Court must consider the disparate impact claim under the APA; judicial review under the APA is available where there is "no other adequate remedy in a court." 5 U.S.C. § 704;

55

*Women's Equity Action League v. Cavazos*, 906 F.2d 742, 750-51 (D.C. Cir. 1990); *Sherman v. Black*, 510 F. Supp. 2d 193, 198 (E.D.N.Y. 2007), *aff'd*, 315 F. App'x 347 (2d Cir. 2009) (dismissing claims of disability-related discrimination because an alternative "adequate" right already "preclude[d] a remedy under the APA"); *see also* Cristina Isabel Ceballos, David Freeman Engstrom, & Daniel E. Ho, *Disparate Limbo: How Administrative Law Erased Antidiscrimination*, 131 Yale L.J. 370 (2021).

### B. DoD Policy Violates Federal Law and the U.S. Constitution.

The SCR discriminates on the basis of sex in violation of Section 1557. *See supra* Section II. It is thus also "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), in violation of the APA. And by violating the Fifth Amendment's liberty and equality guarantees, see *infra* Section IV, the SCR is "contrary to constitutional right." 5 U.S.C. § 706(2)(B).

### IV. Defendants' Policies Violate the Fifth Amendment Right to Procreate.

The District Court erred in dismissing Plaintiff's claim that DoD and VA violated the fundamental right to procreate under the liberty and equality guarantees of the Fifth Amendment. J.A.247-248. In relying on *Harris v. McRae*, 448 U.S. 297 (1980), the District Court fundamentally misunderstood NOW-NYC's claim. Plaintiff does not assert that the Government must affirmatively provide benefits that

vindicate access to a fundamental right. Rather, once the Government elects to grant a benefit that implicates a fundamental right to some, it may not arbitrarily deny that benefit to one group without adequate justification.

The District Court further erred in determining that heightened scrutiny does not apply to Plaintiff's claims, J.A.248, when the Supreme Court has long held that such analysis applies to the right to procreate. *E.g.*, *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942); *see also Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 647 (1974); *Obergefell v. Hodges*, 576 U.S. 644, 673-74 (2015). This Court should vacate and remand based on Plaintiff's well-pled allegations that Defendants' exclusion of some veterans and service members from eligibility for IVF violates their right to be treated equally regarding government actions that implicate the right to procreate.

## A. Defendants' Policies Violate the Right to Procreate Through Unequal Restriction.

The right to procreate is "one of the basic civil rights of man," protected by the Due Process Clauses in the Fifth and Fourteenth Amendments. *Skinner*, 316 U.S. at 541. Two important principles must guide this Court's review of this claim.

First, as with other constitutionally protected rights, like the right to marriage and the right to contraception, the right to procreate must be equally available to all.

57

*Id.* at 541 ("When the law lays an unequal hand on those who have committed intrinsically the same quality of offense and sterilizes one and not the other, it has made as invidious a discrimination . . . ."). The *Obergefell* Court elaborated that "[r]ights implicit in liberty and rights secured by equal protection may rest on different precepts and are not always co-extensive, yet in some instances each may be instructive as to the meaning and reach of the other." 576 U.S. at 672.

When the government provides a benefit implicating a fundamental right, but excludes one group from eligibility without adequate justification, it violates the equality and liberty principles recognized in *Obergefell*, 576 U.S. at 666 (right to marry is fundamental for "all persons, whatever their sexual orientation"), *Loving v. Virginia*, 388 U.S. 1, 12 (1967) (right to marry), *Eisenstadt*, 405 U.S. at 453 (right to contraception), and *Skinner*, 316 U.S. at 537-40 (establishing the right to procreate by invalidating law under both liberty and equality principles that allowed sterilization of only "habitual criminals."). Notably, the level of scrutiny applied in these cases turned on the nature of the right being burdened, not on the nature of the class being disproportionately burdened. *See, e.g.*, *Skinner*, 316 U.S. at 541; *Obergefell*, 576 U.S. at 680 (applying heighted scrutiny to law burdening right to marry, without deciding whether gay men and lesbians were members of a protected class); *M.L.B. v. S.L.J.*, 519 U.S. 102, 115-18 (1996) (invalidating statute requiring

58

indigent mothers to pay fees to appeal termination of their parental rights under due process and equal protection principles); *Pavan v. Smith*, 582 U.S. 563, 566 (2017) (invalidating Arkansas statute that prohibited both members of a same-sex couple to be listed on their child's birth certificate because the statute denied same-sex couples access to the "constellation of benefits that the Stat[e] ha[s] linked to marriage. . . . " (quoting *Obergefell*, 576 U.S. at 670)). As in these cases, the SCR imposes uniquely restrictive standards for this one group of individuals without adequate justification.

Second, the District Court distinguished Plaintiff's claims from those in *Skinner* on the basis that the latter involved state sterilization. J.A.247-48 (Dismissal). However, the right to procreate is not limited to cases involving injury to or destruction of the physical ability to reproduce, like those in *Skinner*. As the Supreme Court made clear in *LaFleur*, 414 U.S. at 640, the right also applies in cases involving arbitrary restrictions on benefits, like those at issue here. In that case, the Court struck down school board requirements that teachers take extended maternity leave beginning at four months of pregnancy and noted that overly restrictive regulations could "constitute a heavy burden on the exercise of these protected freedoms." *Id.*

This case recalls the principles set forth in *LaFleur* and *Pavan.* By arbitrarily excluding one group from eligibility for a governmental benefit, VA and DoD

burden the exercise of the fundamental right to procreate. Members of the military community who seek to build a family but who cannot establish service connection to the satisfaction of Defendants are unable to access IVF care. Plaintiff has therefore met its burden of plausibly alleging that denial of IVF coverage to those unable to establish service connection impermissibly discriminates against them, denying them the equal right to procreate.

### B. The District Court's Improper Reliance on *Harris v. McRae* Mischaracterizes Plaintiff's Claims.

The District Court also erred in relying on *Harris v. McRae*, J.A.247-248 (Dismissal), to dismiss Plaintiff's right to procreate claim. The District Court wrote that the Due Process Clause does not require the state to "confer an entitlement to such funds as may be necessary to realize all advantages of that freedom." J.A.247-248 (Dismissal) (quoting *McRae*, 448 U.S. at 317-18). But *McRae's* invocation is a red herring. Plaintiff does not assert that the Government must affirmatively provide IVF benefits to those in the military community. As the Court emphasized in *Maher v. Roe*, "[t]he Constitution imposes no obligation on the States to pay . . . . But when a State *decides to alleviate some of the hardships of poverty by providing medical care*, the manner in which it dispenses benefits *is subject to constitutional limitations*." 432 U.S. 526, 469-70 (1977) (emphasis added).

In this case, Plaintiff contends that the Government is conferring IVF benefits unequally, contrary to the principles established by the Court. *See Obergefell*, 576 U.S. at 646 (recognizing that "constellation of benefits that the states have linked to marriage" was unduly restricted by states' limitations on same-sex marriage); *Pavan*, 582 U.S. at 566 (reaffirming *Obergefell*'s requirement of equal access to affirmatively provided benefits where restrictions may burden a fundamental right). Plaintiff challenges VA and DoD's discriminatory exclusion of one group of infertile beneficiaries from eligibility for IVF benefits. Thus, *McRae* is inapposite.[21]

### C. Defendant's Policy Cannot Withstand the Heightened Scrutiny Warranted in this Case.

The Supreme Court has held for nearly a century that heightened scrutiny applies to infringement of the right to procreate. *Skinner*, 316 U.S. at 536; *see, e.g.*, *LaFleur*, 414 U.S. at 640-48; *see also Zablocki v. Redhail*, 434 U.S. 374, 381 (1978); *Moe v. Dickens*, 669 F.2d 67, 68 (2d. Cir. 1968); *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982); *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 670 (1966). Accordingly, heightened scrutiny applies here. To survive this standard, policies

---

[21] Further, *McRae* must be confined to the context of abortion, which the Supreme Court has determined is "fundamentally different," than other fundamental rights including procreation. *Dobbs v. Jackson Women's Health Org.*, 5 U.S. 215, 231 (2022).

must be narrowly tailored to serve a compelling governmental interest, *Shapiro v. Thompson*, 394 U.S. 618, 634 (1969); *see also Bernal v. Fainter*, 467 U.S. 216, 219 (1984), or the policy must have an "exceedingly persuasive justification," *United States v. Virginia*, 518 U.S. 515, 531 (1996) ("*VMI*"), demonstrating the "classification serves important governmental objectives and the discriminatory means employed are substantially related to the achievement of those objectives." *Id.* at 524. The District Court erred by failing to apply heightened scrutiny, instead adopting an overly restrictive reading of when such scrutiny applies. J.A.248.

If the district court had applied heightened scrutiny, it would have been compelled to find that the policy would fail. At a minimum, the court was required to allow the case to proceed to discovery. *Cornelio v. Connecticut*, 32 F.4th 160, 172-74 (2d Cir. 2022) (concluding that claims triggering heightened scrutiny should not be dismissed at the pleading stage).

None of the Government's post hoc rationales for the distinction, *see* J.A.248 (Dismissal), suffice to establish a compelling interest, much less that the distinction is narrowly tailored to serve that interest; nor could the Government meet the demanding burden of justification by showing an "exceedingly persuasive justification" for the policy, *VMI*, 518 U.S. at 531, that serves an important governmental objective substantially related to the achievement of its objectives. *Id.*

at 533; *see supra* Section II.A. Defendants' policies actively work against any compelling or exceedingly persuasive governmental interest, not to mention one of the top priorities of the current presidential administration—to allow military personnel to build families and to support IVF treatment. *See* Exec. Order No. 14216, 90 Fed. Reg. 10451 (2025). Thus, even if DoD and VA's claimed justification—cost savings—could be considered here, it would fail even the rational basis test, contrary to the District Court's holding. *See* J.A.248 (Dismissal); *see also LaFleur*, 414 U.S. at 647; *Mem'l Hosp. v. Maricopa Cty.*, 415 U.S. 250, 263 (1974) (finding the "conservation of the taxpayer's purse is simply not a sufficient state interest" where heightened scrutiny applies).

Plaintiff has sufficiently alleged a violation of the fundamental right to procreate. This Court should remand the issue to the District Court for discovery and further litigation.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court should be vacated and reversed.

Respectfully submitted,

/s/ Michael J. Wishnie
Briana Thompson, Law Student Intern
Elizabeth Beling, Law Student Intern
Mia Alvarez, Law Student Intern
Tobey Phillips, Law Student Intern
Natalia Friedlander
Michael J. Wishnie
Jerome N. Frank Legal Services Org.
Yale Law School[22]
P.O. Box 209090
New Haven, CT 06520
*Tel:* (203) 432-4800
michael.wishnie@ylsclinics.org

/s/ Priscilla J. Smith
Donovan Bendana, Law Student Intern
Indu Pandey, Law Student Intern
Priscilla J. Smith
Reproductive Rights & Justice Project
Information Society Project
Yale Law School
319 Sterling Place
Brooklyn, NY 11238
*Tel:* (347) 262-5177
priscilla.smith@ylsclinics.org

---

[22] This brief does not purport to state the views of Yale Law School, if any.

64

**CERTIFICATE OF COMPLIANCE
WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS
AND TYPE STYLE REQUIREMENTS**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(e) and Local Rule 32.1(4)(a) because this brief contains 13,976 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because it is prepared in a proportionally spaced 14-point roman style font, Times New Roman.

/s/ Michael J. Wishnie
Michael J. Wishnie

April 4, 2025

/s/ Priscilla J. Smith
Priscilla J. Smith

April 4, 2025